UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THEODORE O. WILSON,

              Petitioner,

  -against-                                  **MEMORANDUM & ORDER**
                                                                  19-CV-896 (PKC)

WILLIAM A. LEE,

              Respondent.
------------------------------------------------------------X
PAMELA K. CHEN, United States District Judge:

Petitioner Theodore O. Wilson, appearing *pro se*,[1] seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, challenging his convictions and sentence entered in the Supreme Court of the State of New York, Queens County. For the following reasons, the petition is denied in its entirety.

## BACKGROUND

**I.    Facts**

Petitioner met Mildred Shinsel (the "victim") in February of 2010 and the two became romantically involved.[2] (Trial Transcript, Dkt. 10, at ECF[3] 1109.) On an unspecified date

---

[1] Because Petitioner is *pro se*, the Court liberally construes his petition and interprets it "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotation and italics omitted). However, the Court notes that it "'need not act as an advocate for'" Petitioner. *Curry v. Kerik*, 163 F. Supp. 2d 232, 235 (S.D.N.Y. 2001) (quoting *Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998)).

[2] Because Petitioner was convicted, the Court construes the facts in the light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial."); *Cruz v. Colvin*, No. 17-CV-3757 (JFB), 2019 WL 3817136, at *12 (E.D.N.Y. Aug. 14, 2019) (citing, *inter alia*, *Jackson* and *Ponnapula*).

[3] "ECF" refers to the "Page ID" number generated by the Court's CM/ECF docketing system and not the document's internal pagination.

thereafter, the couple began living together in an apartment (the "apartment"). (*Id.* at ECF 1092.) During the course of the relationship, Petitioner was psychologically abusive toward the victim—controlling, for instance, the amount of time she was allowed to use her phone (*id.* at ECF 2079)—as well as physically abusive toward her (*id.* at ECF 2058). In August of 2011, the victim suffered a blood clot on her ear. (*Id.* at ECF 1413–14, 1436.) A doctor at a local hospital examined the victim shortly thereafter and noticed "evidence of previous trauma," including signs of bruising that had healed abnormally. (*Id.* at ECF 1414–15.) When asked to explain what happened, the victim replied that she had been hit by a baseball. (*Id.* at ECF 1414.)

In September of 2011, the victim's mother, who had been unable to reach the victim (*id.* at ECF 1463–64), called Petitioner, told him that she needed to talk to her daughter, and asked Petitioner to put her daughter in contact with her (*id.* at ECF 1465). It is unclear from the record whether Petitioner ever obliged. During another call between Petitioner and the victim's mother, Petitioner told the victim's mother that the victim was "stupid and dumb" and that the victim kept "banging her [own] head against the wall." (*Id.*) The victim's mother subsequently proposed to Petitioner that her daughter receive a "blessing," as is sometimes practiced in the Mormon faith (*id.* at ECF 1173),[4] which the victim's mother intended to serve as a pretext to get others into the apartment to check on the victim (*id.* at ECF 1466–67). Around this time, Petitioner called a friend who was a nurse and told him that the victim had fallen and was acting "possessed." (*Id.* at ECF 1539–43.) Upon hearing moaning in the background during the call, the friend advised Petitioner to take the victim to the hospital. (*Id.* at ECF 1541.)

---

[4] At trial, a witness clarified as follows: "The blessing is done by mostly two persons in [the] priesthood. One of them is putting some oil on the heads of the one who will be blessed. It's anointing and the second one is sealing, is anointing after speaks the words of the blessing." (*Id.* at ECF 1142–43.)

2

On October 1, 2011, two clergymen arrived at the apartment to perform the blessing, as requested by the victim's mother. (*Id.* at ECF 1140–41, 2070–71.) Upon their arrival, the clergymen discovered the victim lying on a mattress, rocking back and forth and moaning incoherently. (*Id.* at ECF 1302, 1142, 2058.) She was visibly injured, with blue rings under her bloodshot eyes and blood on her swollen lips. (*Id.* at ECF 1142, 1173.) Petitioner explained that the victim had been suffering from hallucinations, pointed to various dents on a wall in the apartment, and indicated that the victim had banged her head against the wall. (*Id.* at ECF 1170–71.) When the clergymen suggested that the victim be taken to a hospital to receive medical treatment, Petitioner initially objected, fearing that he would be blamed, but ultimately agreed to allow an ambulance to be called. (*Id.* at ECF 1143.)

When first responders arrived, they discovered that the victim had suffered serious injuries including a ripped lip, flesh hanging out of the corner of her mouth, two black eyes, bruises on her face and chest, and lacerations on her back. (*Id.* at ECF 1283, 1340.) An emergency medical technician ("EMT") asked the victim several times whether she was afraid (*id.* at ECF 1286), and in response, the victim nodded her head slightly (*id.* at ECF 1322, 1335). The EMTs carried the victim to an ambulance and called the police. (*Id.* at ECF 1286, 1335, 1349.) In the ambulance, an EMT asked the victim if Petitioner had caused her injuries and she responded affirmatively. (*Id.* at ECF 1246, 1349.) At the hospital, the victim lapsed into a coma, after which she was resuscitated and put on a ventilator. (*Id.* at ECF 1653.) A subsequent examination revealed that she had sustained the following injuries: black eyes, an infected cigarette burn, cauliflower ear,[5] broken ribs, a collapsed lung, several broken vertebrae in her neck and back, a broken nose, a

---

[5] "Cauliflower ear," also known "as perichondrial hematoma or wrestler's ear, is a deformity of the ear caused by trauma." Healthline, *Everything You Should Know About Cauliflower Ear*, https://www.healthline.com/health/cauliflower-ear (last visited Oct. 1, 2019).

3

dislocated shoulder, a shattered breastbone, multiple lacerations and bruises all over her body, as well as diffuse axonal injury to her brain.[6] (*Id.* at ECF 1654–65, 1674, 1725.)

II.     **Trial & Direct Appeal**

Based on the foregoing, Petitioner was criminally tried by a jury in December of 2013 before the Honorable Joel Blumenfeld of the Supreme Court, Queens County. (*Id.* at ECF 822.) The charged offenses were: one count of attempted murder in the second degree, two counts of assault in the first degree, and one count of assault in the second degree. (*Id.* at ECF 2102.) The two first-degree assault counts were brought under different theories (*id.*): the first under an intent-to-disfigure-permanently theory and the second under a depraved-indifference theory (*id.* at 2105–07). After the conclusion of the trial, the jury found Petitioner: (1) not guilty of attempted murder in the second degree, (2) not guilty of first-degree assault under the intent-to-disfigure-permanently theory, (3) guilty of first-degree assault under the depraved-indifference theory, and (4) guilty of assault in the second degree. (*Id.* at ECF 2167–68.) Justice Blumenfeld sentenced Petitioner to concurrent sentences of: (1) 21 years of imprisonment plus five years of post-release supervision for the depraved-indifference first-degree assault conviction, and (2) seven years of imprisonment plus three years of post-release supervision for the second-degree assault conviction. (*Id.* at ECF 2219–20.)

On January 10, 2014, Petitioner filed a motion in the trial court to set aside the verdict under New York Criminal Procedure Law § 330.30. (Post-Trial Briefings & Orders, Dkt. 10, at ECF 80–122.) Justice Blumenfeld denied the motion on January 30, 2014. (*Id.* at ECF 126–33.)

---

[6] "Diffuse axonal injury" is "a severing of the axons in the brain that occurs when the brain is suddenly moved inside the skull." *Claudio v. Portuondo*, 74 F. App'x 120, 122 (2d Cir. 2003) (summary order).

4

Thereafter, Plaintiff filed an additional motion to set aside the verdict (*id.* at ECF 134–48), which Justice Blumenfeld also denied on March 4, 2014 (*id.* at ECF 151–55).

On March 13, 2014, Petitioner appealed to the New York Appellate Division, Second Department (the "Second Department"). (Direct Appeal Record, Dkt. 10, at ECF 157.) With the assistance of counsel, Petitioner argued: (1) the evidence was insufficient to prove the depraved indifference element for first-degree assault because the victim's injuries were caused solely by intentional conduct and the charged crime did not meet the extremely narrow set of circumstances under which depraved indifference may be established when there is only one victim; (2) the guilty verdict on both depraved-indifference first-degree assault and second-degree assault under an intentional theory was repugnant and violated Petitioner's due process right to a fair trial; and (3) the trial court failed to properly respond to a jury note, which also violated Petitioner's due process right to a fair trial. (*Id.* at ECF 204–26.) In a decision dated February 1, 2017, the Second Department affirmed Petitioner's convictions and held that: (1) the prosecution "adduced legally sufficient evidence to support [Petitioner's] conviction of assault in the first degree"; (2) Petitioner "failed to preserve for appellate review his contention that the verdict [was] repugnant," but that such a claim would nevertheless fail on the merits anyway; and (3) that Petitioner's claim related to the jury note was "without merit." *People v. Wilson*, 45 N.Y.S.3d 800, 800–01 (N.Y. App. Div. 2017).

On June 20, 2017, the New York Court of Appeals (the "Court of Appeals") granted Petitioner leave to appeal the Second Department's decision. *People v. Wilson*, 86 N.E.3d 265 (N.Y. 2017). With the assistance of counsel, Petitioner argued before the Court of Appeals that: (1) the evidence was insufficient to prove the depraved indifference *mens rea* for first-degree assault because the incident involved a single adult victim whose injuries were solely the result of

5

intentional conduct, and (2) Petitioner's due process right to a fair trial was violated because the trial court did not adequately respond to a jury note. (Direct Appeal Record, Dkt. 10, at ECF 352–83.) On July 14, 2018, the Court of Appeals affirmed the decision of the Second Department and held that: (1) evidence that Petitioner recklessly engaged in conduct creating a grave risk of death was sufficient to support his depraved-indifference first-degree assault conviction; (2) evidence that Petitioner acted toward the victim in a manner that demonstrated depraved indifference to her life was sufficient to support the depraved-indifference first-degree assault conviction; (3) proof of Petitioner's intent to inflict serious physical injury did not preclude a finding that he acted with depraved indifference; (4) evidence that Petitioner engaged in a "brutal course of conduct" against a "particularly vulnerable victim" sufficed to support the depraved-indifference first-degree assault conviction; and (5) the rule limiting the circumstances under which depraved-indifference murder could be charged for a one-on-one crime did not apply to Petitioner's depraved-indifference first-degree assault charge. *See People v. Wilson*, 109 N.E.3d 542, 547–52 (N.Y. 2018).

## III. Procedural History

On February 13, 2019, Petitioner commenced this timely *habeas corpus* action. (*See generally* Petition ("Pet."), Dkt. 1.)[7] Petitioner filed an addendum to his petition on February 20,

---

[7] A petitioner must file an application for a writ of *habeas corpus* within one year of his conviction becoming final. 28 U.S.C. § 2244(d)(1)(A). A "properly filed" state collateral proceeding tolls the deadline on filing a writ of *habeas corpus* from the time the petitioner initiates the state collateral proceeding. *Fernandez v. Artuz*, 402 F.3d 111, 112 (2d Cir. 2005). Under these circumstances, the limitations period is tolled during the entire pendency of the collateral proceeding. *Carey v. Saffold*, 536 U.S. 214, 220 (2002); *Felder v. Goord*, 564 F. Supp. 2d 201, 212 n.4 (S.D.N.Y. 2008). A judgment on a petitioner's collateral attack on his conviction "becomes final 'by the conclusion of direct review or the expiration of the time for seeking such review.'" *Fernandez*, 402 F.3d at 112 (quoting 28 U.S.C. § 2244(d)(1)(A)).

On July 30, 2018, Petitioner filed a motion in the trial court to set aside his sentence pursuant to New York Criminal Procedure Law § 440.20 (Post-Conviction Record, Dkt. 10, at ECF 487–95), which the trial court denied on November 13, 2018 (*id.* at ECF 575). Petitioner had

2019. (Dkt. 5.) Respondent filed an opposition to the *habeas* petition on May 31, 2019 (Dkt. 11), and Petitioner subsequently filed several documents in reply (Dkts. 15–17).

## STANDARD OF REVIEW

Section 2254 provides that a *habeas corpus* application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A state court adjudicates a petitioner's federal constitutional claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Norde v. Keane*, 294 F.3d 401, 410 (2d Cir. 2002) (quotations omitted). "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted." *Johnson v. Williams*, 568 U.S. 289, 301 (2013); *see id.* at 301–02 (explaining that "the presumption that the federal claim was adjudicated on the merits may be rebutted" by either: (1) "the habeas petitioner (for the purpose of showing that the claim should be considered by the

---

30 days to appeal the denial of his motion to set aside the verdict. *See* N.Y. Crim. Proc. Law § 460.10(1)(a); *Jones v. Barkley*, No. 09-CV-1961 (NRB), 2010 WL 2891188, at *5 n.6 (S.D.N.Y. July 8, 2010). There is no evidence in the record before this Court that Petitioner ever sought leave to appeal the denial of that motion and Respondent represents in its submissions to the Court that Petitioner declined to do so. (*See* Respondent's Affidavit & Brief, Dkt. 9, at ECF 55.)

Accordingly, the Court concludes that Petitioner's conviction became final on December 13, 2018, the day on which Petitioner's time to appeal the trial court's denial of his motion to set aside the verdict expired. Petitioner therefore had until December 13, 2019 to file his *habeas* petition. *See* 28 U.S.C. § 2244(d)(1)(A). Petitioner filed his *habeas corpus* petition on February 13, 2019. (*See generally* Pet., Dkt.1.) This action is therefore timely.

7

federal court *de novo*)"; or (2) "the State (for the purpose of showing that the federal claim should be regarded as procedurally defaulted)").

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." *Howard v. Walker*, 406 F.3d 114, 122 (2d Cir. 2005) (quotation omitted). A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in [Supreme Court cases]," or it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (quotations omitted).

A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* (quotation omitted). The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a deferential standard of review: "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 411 (2000)); *see also Eze v. Senkowski*, 321 F.3d 110, 121 (2d Cir. 2003) (observing that where a state court adjudicates a federal constitutional claim on the merits, "we must apply AEDPA deference"). Under this standard, the Court must "assess whether the state court's decision was 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Garner v. Lee*, 908 F.3d 845, 861 n.14 (2d Cir. 2018) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

8

Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

## DISCUSSION

Petitioner raises three arguments in support of his *habeas* petition: (1) the evidence at trial did not sufficiently prove that he was guilty of depraved-indifference assault, (2) his verdict was repugnant and inconsistent, and (3) his due process rights were violated when the trial court failed to meaningfully respond to a jury note that inquired as to why a prosecutor was discharged of her duties on the case. (*See* Pet., Dkt. 1, at ECF 5–10.) The Court addresses each argument in turn.

### I. Insufficiency of the Evidence

Petitioner first claims that his right to a fair trial was violated because the prosecution did not present legally sufficient evidence to support a conviction of depraved-indifference assault. (*Id.* at ECF 5.) Specifically, Petitioner argues that the prosecution "exaggerated the victim's injuries," and that the evidence only showed that his acts were "intentional" and not "depraved" or "reckless." (*Id.*) Because the Court of Appeals rejected this claim on the merits, *see People v. Wilson*, 109 N.E.3d at 547–52, that court's decision is entitled to AEDPA deference. *See* 28 U.S.C. § 2254(d); *Eze*, 321 F.3d at 121.

"When it considers the sufficiency of the evidence of a state conviction, a federal court must look to state law to determine the elements of the crime." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000) (quotation and brackets omitted); *see Dixon v. Miller*, 293 F.3d 74, 79 (2d Cir. 2002) ("The state court's interpretation of the proof required must be applied on collateral review to prevent a violation of the Due Process Clause of the Fourteenth Amendment,

which guards against convicting a defendant without proof beyond a reasonable doubt on each element of his crime."). At the same time, however, arguments that the trial court misapplied state law are generally not cognizable on federal *habeas* review. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *DiGuglielmo v. Smith*, 366 F.3d 130, 136 (2d Cir. 2004) ("State courts are the ultimate expositors of state law; it is not the province of a federal habeas court to reexamine state-court determinations of state-law questions." (quotations and citations omitted)); *Ponnapula*, 297 F.3d at 182 ("[N]ot every error of state law can be transmogrified by artful argumentation into a constitutional violation." (quotation omitted)); *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001) ("The state court ruling . . . is an interpretation of state law that we will not review.").

The Court holds that the Court of Appeals' rejection of Petitioner's argument as to this claim was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent; nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state trial proceeding. Under New York law, a person is guilty of depraved-indifference first-degree assault when, "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes serious physical injury to another person." N.Y. Penal Law § 120.10(3). On direct appeal, the Court of Appeals rejected Petitioner's argument that one who acts intentionally cannot be deliberately indifferent at the same time, reasoning that "proof of an intent to inflict serious physical injury does not necessarily preclude a finding of depraved indifference in assault cases," because "a defendant could certainly intend one result—serious physical injury—while recklessly creating a grave risk that a different, more serious result—

death—would ensue from his actions." *Wilson*, 109 N.E.3d at 548 (quotation and brackets omitted). On *habeas* review, this Court cannot second-guess the Court of Appeals' interpretation of New York law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Nor does Petitioner's argument that the prosecutor "exaggerated the victim's injuries" (Pet., Dkt. 1, at ECF 6) furnish an adequate basis for the Court to grant Petitioner *habeas* relief. "The Second Circuit has adopted a three-part test for determining whether a prosecutor's misconduct resulted in a denial of due process. The court is to consider the severity of the misconduct, the nature of any curative measures taken by the judge, and the certainty of conviction absent the improper conduct." *Grace v. Artuz*, 258 F. Supp. 2d 162, 176 (E.D.N.Y. 2003) (citing *United States v. Millar*, 79 F.3d 338, 343 (2d Cir. 1996)).

The Court holds that the prosecutor did not err in describing the victim's injuries, which dooms any argument that the prosecutor's comments regarding those injuries so infected the trial as to render it fundamentally unfair and in violation Petitioner's due process rights. *See Jackson v. Conway*, 763 F.3d 115, 146 (2d Cir. 2014) ("[W]hile the State has a duty to refrain from improper methods calculated to produce a wrongful conviction, such methods will warrant habeas relief only if they so infected the trial with unfairness as to make the resulting conviction a denial of due process." (quotations and citations omitted)). At trial, the clergymen who observed the victim in the apartment described her as "pale" and "not healthy" (Trial Transcript, Dkt. 10, at ECF 1142), with "eyes [] all bloodshot" and "lips [that] were swollen" (*id.* at ECF 1173). A first responder who encountered the victim in the apartment described her as "pale" and "a little beat up" (*id.* at ECF 1283), and another first responder at the scene explained that the victim "had black

and blue eyes which we call medically raccoon eyes, flesh hanging from the corner of her mouth, bruises on her face, [and] bruises on her neck" (*id.* at ECF 1340). Finally, a physician who treated the victim at the hospital testified that she had sustained black eyes, an infected cigarette burn, cauliflower ear, broken ribs, a collapsed lung, several broken vertebrae in her neck and back, a broken nose, a dislocated shoulder, a shattered breastbone, multiple lacerations and bruises all over her body, as well as diffuse axonal injury to her brain. (*Id.* at ECF 1654–65, 1674, 1725.)

The prosecutor was therefore on sufficiently solid evidentiary footing when she argued in summation that the victim "suffered numerous broken bones"; "[t]hat she had broken her nose"; that "her orbital bone" was broken; that "[s]he had her vertebrae broken at her neck" and "at her spine"; "[t]hat she collapsed her lung [and] dislocated her shoulder"; that she had "black eyes," "tears to her lips, and bruising all over her lips"; "[t]hat she had fully circular bruises on her leg"; and "[that] she suffered brain damage." (*Id.* at ECF 2062.) *See United States v. Farhane*, 634 F.3d 127, 167 (2d Cir. 2011) (recognizing that the prosecution "may be passionate in arguing that the evidence supports a conviction"); *Baide-Ferrero v. Ercole*, No. 06-CV-6961 (RJS), 2010 WL 1257615, at *13 (S.D.N.Y. Mar. 31, 2010) (denying *habeas* relief where "there was no misconduct on the part of the prosecutor at the petitioner's trial, and even if there was misconduct, given the weight of the evidence against petitioner, it [was] not sufficiently serious").

Accordingly, the Court declines to grant *habeas* relief to Petitioner on his insufficiency-of-the-evidence claim.

## II.     Repugnant Verdict

Petitioner next argues that the verdict entered against him at trial was repugnant and inconsistent. (Pet., Dkt. 1, at ECF 7–8.) This argument is procedurally barred.

12

"A federal habeas court will not review a claim rejected by the state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Beard v. Kindler*, 558 U.S. 53, 55 (2009) (quotation and brackets omitted). On direct appeal, Petitioner argued, *inter alia*, that the guilty verdict on both depraved-indifference first-degree assault and second-degree assault under an intentional theory was repugnant and violated Petitioner's due process right to a fair trial. (Direct Appeal Record, Dkt. 10, at ECF 214–18.) Specifically, Petitioner argued that the verdict convicting him on both charges was "legally inconsistent," since he could not have caused the exact same result, serious physical injury to the victim, under two different mental states. (*Id.* at ECF 214.) The Second Department held that Petitioner "failed to preserve for appellate review his contention that the verdict [was] repugnant." *Wilson*, N.Y.S.3d at 801.[8] The Second Department based its procedural ruling on New York's "contemporaneous objection rule," which provides that an objection is preserved if the objecting party: "(1) made his or her position regarding the ruling known to the trial court; (2) made a protest, and the trial court 'expressly decided the question raised on appeal'; or (3) 'without success . . . either expressly or impliedly sought or requested a particular ruling.'" *Downs v. Lape*, 657 F.3d 97, 102–03 (2d Cir. 2011) (quoting N.Y. Crim. Proc. Law § 470.05(2)).

The Second Circuit has "held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule" and has observed "that the rule constitute[s] an independent ground for disposing of" a petitioner's claim on *habeas* review. *Downs*, 657 F.3d at 104; *see also Garcia v. Lewis*, 188 F.3d 71, 78–79 (2d Cir. 1999) ("[I]f a state

---

[8] Indeed, Petitioner conceded in his briefing before the Second Department that this argument was not preserved. (*See* Direct Appeal Record, Dkt. 10, at ECF 218 ("Although appellant did not preserve this issue for appeal, the Court should reach it in the interest of justice, which the Appellate Division has routinely done under similar circumstances.").)

13

appellate court refuses to review the merits of a criminal defendant's claim of constitutional error because of his failure to comply with a contemporaneous objection rule, a federal court generally may not consider the merits of the constitutional claim on habeas corpus review." (quotations, brackets, and ellipsis omitted)). The Court therefore declines to consider Petitioner's argument that the verdict entered against him was repugnant and legally inconsistent.[9] *See Torres v. Racette*, No. 11-CV-1647 (PKC), 2018 WL 4762246, at *4 (E.D.N.Y. Oct. 2, 2018) (holding that "the Court is precluded from reaching the merits of Petitioner's" claims where "Petitioner did not object to the allegedly improper . . . testimony or summation remarks, and, therefore, pursuant to New York Criminal Procedure Law § 470.05(2), both of Petitioner's claims are unpreserved"); *Cromwell v. Smith*, No. 13-CV-29 (KBF), 2014 WL 1280287, at *9 (S.D.N.Y. Mar. 25, 2014) ("[B]ecause there is no dispute that petitioner failed to object to the evidence [at trial], the contemporaneous objection rule provides an adequate and independent ground to support the Appellate Division's rejection of the petitioner's claims.").[10]

Accordingly, the Court declines to grant *habeas* relief to Petitioner on his repugnant-verdict claim.

---

[9] Although the Court rejects this claim on procedural grounds, it nevertheless notes that the Court of Appeals appeared to explicitly reject it on the merits on direct appeal. *See Wilson*, 109 N.E.3d at 548 ("[P]roof of an intent to inflict serious physical injury does not necessarily preclude a finding of depraved indifference in assault cases. . . . [A] defendant could certainly intend one result—serious physical injury—while recklessly creating a grave risk that a different, more serious result—death—would ensue from his actions" (quotations and brackets omitted)). If this Court had reached the merits, the Court of Appeals' pronouncement on direct appeal would have been binding. *See Bradshaw*, 546 U.S. at 76.

[10] That the Second Department went on to reject Petitioner's repugnant-verdict argument on the merits, *Wilson*, 45 N.Y.S.3d at 801, does not matter. *See Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) ("[E]ven when a state court says that a claim is not preserved for appellate review but then rules in any event on the merits, such a claim is procedurally defaulted." (quotations omitted)).

**III.     Failure to Respond Meaningfully to Jury Note**

Finally, Petitioner argues that his due process rights were violated when the trial court failed to meaningfully respond to a jury note that inquired as to why a prosecutor was discharged of her duties on the case. (*See* Pet., Dkt. 1, at ECF 10–11.) Because the Court of Appeals rejected this claim on the merits, *see People v. Wilson*, 109 N.E.3d at 552, that court's decision is entitled to AEDPA deference. *See* 28 U.S.C. § 2254(d); *Eze*, 321 F.3d at 121.

The facts underlying this claim are as follows. During jury deliberations, the jury sent out a note asking to know "why the grand jury D.A. was dismissed." (Trial Transcript, Dkt. 10, at ECF 2138.) The trial court provided Petitioner with the transcript of Assistant District Attorney ("ADA") Kelly Sessoms-Newton's testimony before the jury, and observed that there was no testimony or evidence that had been presented to the jury indicating that she had been dismissed. (*Id.* at ECF 2139–41.) Nevertheless, the trial court offered Petitioner two options: (1) answer to the jury that there was no testimony before them that she was dismissed, or (2) give an answer that was outside of the record before the jury—that an attorney could not be both a witness and an advocate in a proceeding and that ADA Sessoms-Newton was recused as a prosecutor on this ground.[11] (*Id.* at ECF 2141.) The trial court clarified, however, that both Petitioner and the prosecution would have to agree to any outside-the-record response. (*Id.* at 2141–42.) Unhappy with both options, Petitioner wanted the trial court to explain not only that ADA Sessoms-Newton had been recused because Petitioner elected to call her as a witness, but also that she was dismissed due to her pre-trial investigative misconduct. (*Id.* at ECF 2143.) Noting that there was no evidence in the record before the jury that ADA Sessoms-Newton was dismissed from the case on such a

---

[11] Prior to trial, when Petitioner put ADA Sessoms-Newton on a witness list, she was subsequently recused from the case because she could not both serve as an advocate and a witness in the same criminal proceeding. (*Id.* at ECF 2140, 2142.)

15

basis, Justice Blumenfeld clarified to Petitioner that his decision to have ADA Sessoms-Newton removed as an advocate from the case was based on the following:

> My decision said that the defendant tells me that he wants to call [ADA Sessoms-Newton] because on the record Judge Zayas[12] found that her going into your apartment was improper and that the pictures that she took inside your apartment were improper. And that you also want to argue, just as she was willing to improperly violate your rights, you wanted to argue, which is what you told me you wanted to argue, was that she compelled the grand jury stenographer to change the testimony. That's what you told me you were going to argue. And once—I then wrote in the decision you have a right to your defense. I can't tell you what you can't do in your defense. But once you tell me you want to call the prosecutor as your witness, the canons of professional responsibility prevent her from being both a trial attorney and a witness in your case.

(Trial Transcript, Dkt. 10, at ECF 2146.)

Because the response that Petitioner requested was not in the record before the jury, Justice Blumenfeld explained that he would only respond to the jury's note by telling the jury that ADA Sessoms-Newton was dismissed from the case due to pre-trial investigative misconduct if the prosecution would agree to such a response. (*Id.* at ECF 2149.) Because the prosecution did not consent to this outside-the-record response, Justice Blumenfeld declined to give it. (*Id.*) Ultimately, the trial court responded to the jury note by telling the jury that "there was no testimony" that ADA Sessoms-Newton was dismissed. (*Id.* at ECF 2151.)

The Court holds that the Court of Appeals' rejection of Petitioner's argument as to this claim was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent; nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state trial proceeding. "In order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state

---

[12] Justice Joseph Zayas presided over pre-trial hearings in Petitioner's criminal case. (*See* Pre-Trial Hearings & Transcript, Dkt. 10, at ECF 579–821.)

16

law," Petitioner "must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law." *Smith v. Herbert*, 275 F. Supp. 2d 361, 369 (E.D.N.Y. 2003) (quoting *Casillas v. Scully*, 769 F.2d 60, 63 (2d Cir. 1985)). "To be entitled to federal habeas relief, a petitioner must show not merely that a particular jury instruction is 'undesirable, erroneous, or even universally condemned,' but also that it violated some right that was guaranteed to him by the federal constitution." *Russo v. Zon*, No. 05-CV-0293 (MAT), 2009 WL 3614527, at *12 (W.D.N.Y. Oct. 26, 2009) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)). Such a claim sounds in due process. *See Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001) ("The question is not whether the trial court gave a faulty instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." (quotation omitted)).

Here, the trial court did not err in declining to instruct the jury in the manner in which the Petitioner requested. As Justice Blumenfeld made clear, ADA Sessoms-Newton was recused as a prosecutor because Petitioner indicated that he wanted to call her as a witness and, under the advocate/witness rule, ADA Sessoms-Newton was accordingly barred from serving as a prosecutor on the case. (Trial Transcript, Dkt. 10, at ECF 2146.) This was a correct interpretation of law. *See Ramey v. Dist. 141 Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 282 (2d Cir. 2004) ("The advocate-witness rule applies, first and foremost, where the attorney representing the client before a jury seeks to serve as a fact witness *in that very proceeding*." (emphasis in original)). As Justice Blumenfeld noted, there was no evidence in the record before the jury to suggest that ADA Sessoms-Newton was dismissed from the case due to prosecutorial misconduct during the pre-trial investigative phase of the case. (Trial Transcript, Dkt. 10, at ECF 2149–50.) Declining to instruct the jury in a manner that is unsupported by the evidence

17

presented in the case does not constitute a due process violation. *See Bien v. Smith*, 546 F. Supp. 2d 26, 47 (E.D.N.Y. 2008) ("Importantly, '[d]ue process does not require the giving of a jury instruction when such charge is not supported by the evidence.'" (quoting *Blazic v. Henderson*, 900 F.2d 534, 541 (2d Cir. 1990))). Moreover, the response the trial court gave—that there was no evidence in the relevant record that ADA Sessoms-Newton was dismissed—was a statement of fact. (Trial Transcript, Dkt. 10, at ECF 2149–50.)

Accordingly, the Court declines to grant *habeas* relief to Petitioner on his claim that the trial court failed to meaningfully respond to the jury note.

## CONCLUSION

For the reasons set forth above, the petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 is denied. Petitioner is denied a certificate of appealability, as he has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Middleton v. Att'ys Gen.*, 396 F.3d 207, 209 (2d Cir. 2005) (denying certificate of appealability where petitioner has not shown that "reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (quotations and ellipsis omitted)). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum & Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is respectfully directed to enter judgment and close this case accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: October 1, 2019
       Brooklyn, New York